Lovelace v. McKenna is our next case for argument. Mr. Nelson. Good morning, Your Honors. My name is Chris Nelson and I represent the plaintiff appellant in this case, Mr. Thomas Lovelace. The big issue in this case was whether my client was beaten or not by correctional officers. The district court, without good reason, excluded two pieces of evidence that went to that core issue and whether my client's story was credible. First, the court redacted a note showing Mr. Lovelace complained to a treating psychologist about the beating. It was not hearsay and even if it was, it fell within an exception. When that statement was offered, did Lovelace rely on Rule of Evidence 802D1B? That's the one that allows, that says that prior consistent statements are not hearsay. No, Your Honor. Lovelace did not rely on that. That has to be the best argument for admitting that bit of evidence. It's defined in the rule as not hearsay. Correct. But, you know, this isn't your fault. You got into this much later, but usually we say the district judge needs to be alerted to the rule under which something is admissible. And I would agree with that, Your Honor. We did raise for the district judge the issue of the statement itself not being hearsay because the statement was not offered to prove the truth of the matter asserted, and then we also argued that it should have come in under 803.4, which is an exception to hearsay for statements that are made for the purpose of medical diagnosis or treatment, or we did not raise the prior... Right, but the foundation for that exception is more elaborate. Prior inconsistent statement, or prior consistent statements are routinely admitted. Agreed. That's the path of least resistance to get this in. Had that been raised with the trial court, then we would be able to argue that position today. We have, before the court today, the issue of the statement itself not being hearsay because, as I said, it was not presented to prove the truth of the matter asserted. The statement that was redacted... That's the beauty. I was going to say, that's the beauty of Rule 802. It's defined as, a prior consistent statement is defined as not hearsay. Yes, Your Honor. You have to show, in order to introduce the prior consistent statement, you have to show that the witness's credibility has been attacked, but most certainly the defendant's attacked Loveless's credibility. Sure. Absolutely. And specifically getting to that issue, though, of the statement not being hearsay, it was not introduced to prove the truth of the matter asserted. The statement was only when the COs kicked my ass, and the statement was not being offered to prove that assertion, therefore the statement was not hearsay. It did also fall under the exception afforded by Rule 803.4, which allows a statement into evidence that's provided for the purpose of medical diagnosis or treatment. In this case, the court, the defendants, and Dr. Bohenik acknowledged that the statement was reasonably pertinent to Mr. Loveless's treatment. The defendants argued, however, that the statement was not made for the purpose of diagnosis. That argument belies common sense and the doctor's notes themselves. The position that the defendants take is that treatment for frustration about a grievance related to the beating somehow does not fall under 803.4, while a statement about treatment for the beating itself would fall under that statement. Now the reason why that belies common sense is because when you're treating something like frustration, the cause of that frustration obviously matters. The cause was something like a correctional officer belittling an inmate, then the treatment might differ from anxiety created by something like a beating.  When you look at the notes themselves, the reason why she specifically quoted Mr. Loveless's statement was because it was pertinent to her treatment, which in the note is suggestive counseling. That was the treatment that she thought was appropriate based on what Mr. Loveless told her in the moment. So in addition to that, Rule 803.4 also acknowledges that a statement that exhibits the cause or inception of a medical condition would fall under that statement, and this statement did so. It revealed the cause, which was Mr. Loveless's frustration about the grievance process related to his beating. Now that redaction was not harmless error in this case. In this case, every piece of evidence and every witness mattered. As the court recognized in Bracey, it's very difficult for inmates to obtain third-party evidence when they are incarcerated. And defendants were able to use that in this case to their advantage. They argued that the lack of a reference in notes prepared by the nurses about the beating meant that the beating did not occur. Now Mr. Loveless's response to that in primary argument, which was developed in part on Bracey, is that there's a reason why these notes do not contain reference to the beating, and that's because the people preparing the notes realized that liability might result if they write something such as that an inmate was beaten in their notes. Because Mr. Loveless was prevented from showing that specific note in this case, he was unable to fully show why it was suspicious that the beating was not referenced in other notes. And Mr. Loveless had a complaint that he filed shortly after the beating. He had a grievance shortly after the beating. And there are other notes, including the note prepared by Dr. Larson at Big Muddy River Correctional Facility that referred to the beating. With all these pieces of evidence, Mr. Loveless was trying to show that it was suspicious that the beating did not come up in the nurses' notes. Having that statement from Dr. Bohenik and the statement from a treating medical professional at the Dixon Prison Facility would have helped make that argument more forceful. Another major argument- That sounds like an argument that the doctor's note showed that the beating did occur. In other words, it's being offered for the truth. It showed that Mr. Loveless sought treatment for the beating, and he sought treatment because of his frustration with the beating itself. And what that would have affected for Mr. Loveless would have been the ability to better corroborate his story by showing that there was third-party documentation that he was complaining about the beating to other people. It's not necessarily showing the core statement that was in that note that was redacted, when the correctional officers beat my ass, was true. But rather, that there was a trail of evidence showing that Mr. Loveless was seeking treatment and complaining about the beating to other professionals and other individuals within the prison facility, which would have corroborated his story and provided more credibility to his story. As the defendants acknowledged, this was a case about credibility. Another harm that came from the redaction was that it completely unmoored Dr. Bohenik's testimony from the claims at issue in the trial. The jury did not get to hear what Dr. Bohenik's relevance was with regard to Mr. Loveless's claim. All they heard was that Dr. Bohenik treated Mr. Loveless because of a grievance he filed related to mistreatment from correctional officers. Now, that mistreatment could have meant anything to the jury. It could have meant that the correctional officer was mean to him one day when he was being moved from one cell to another. The jury had no way to place the context of the treatment for Mr. Loveless or what Dr. Bohenik was doing in the trial within the overall picture of the case. And finally, it was significant that within the note itself, Dr. Bohenik noted that that day, Mr. Loveless appeared logical, he appeared coherent, and there was nothing remarkable about his thought process. The defendants argued at trial that Mr. Loveless had mental health issues and that the beating could have been a figment of his imagination. If we had been able to have testimony from the doctor that that day when they were discussing the grievance, the doctor found Mr. Loveless to be logical and to be coherent, it would have helped refute that argument that the defendants made. Moving on to the issue of the relevant testimony establishing the credibility of Mr. Sullivan. The court erred in excluding that testimony because the testimony was extraordinarily important to establishing the credibility of the only non-party eyewitness to the beating. Now, the basis for the court's decision to exclude that statement is not entirely clear. It was a decision made the morning of when Mr. Sullivan's deposition testimony was read. But it appears that the court based this decision on the prejudicial impact of the statement. The statement was minimally prejudicial to the defendants because the statement was about the Illinois Department of Corrections in general, not about any of the individual defendants or even correctional officers specifically. And the statement that Mr. Sullivan put forward was that he was nervous about possible retaliation in his transfer back to Dixon, which is something that the defendants may not have been involved with whatsoever. Such prejudice did not substantially outweigh the probative value of that statement. The testimony was crucial to Mr. Loveless's case, again, because Mr. Sullivan was the only non-party eyewitness. If the jury believed Mr. Sullivan, they would have found for Mr. Loveless. As defendants acknowledged in their opening statement, credibility was paramount in this case. And because the statement was not introduced, the court essentially allowed a one-sided attack on Mr. Sullivan's credibility. Well, his statement was introduced, just there was a minor redaction. His statement about motive was redacted. His speculation about motive, that COs like to stick together and cover things up. Well, it was a statement about IDOC sticking together. It didn't specifically refer to the correctional officers. In general? In general. His statement about the general motives of correctional officers when confronted with situations like this. Yes, Your Honor. His testimony about what he saw, his deposition testimony came in.  Credibility, which is also, as the defendants point out, what the court indicated before Mr. Sullivan's deposition was read. However, that only provided a superficial analysis of his credibility. The reason why this statement was significantly important was, for one, Mr. Sullivan was not present before the jury that day, and therefore, the jury could not assess his credibility in a typical sense. He was unavailable, and so the deposition was read from the bench, from the witness stand. And as a result, any testimony that was in the deposition that went to credibility was crucially important, because the jury didn't have much to base the veracity of Mr. Sullivan's testimony on. And the reason why that statement, although there is a portion in there about the correctional, about IDOC and fear of retaliation, the reason why that statement is specifically important to credibility is because it shows that Mr. Sullivan had skin in the game to provide the testimony, and that he wouldn't be testifying if he didn't truly believe in what he was saying. He was risking his own well-being. The statement was not cumulative, because it was the only portion of the deposition where Mr. Sullivan was asked about his reasons for testifying today. It was not a speculative statement, because Mr. Sullivan was basing his testimony on his personal experience, having been incarcerated, and based on what he had seen in IDOC. And again, it was an incredibly crucial statement to Mr. Lovelace's case, because it went to the credibility of a witness, who, if the jury believed, would have found for Mr. Lovelace. If there are no further questions, Your Honors, I will reserve the rest of my time for rebuttal. Thank you. Certainly, counsel. Ms. Buell. Good morning, Your Honors, counsel, and may it please the Court. Assistant Attorney General Kaitlin Buell, on behalf of Defendants Appelese, Darren Smith, Todd McKenna, and Leslie Epson. On the record that is presented, sufficient evidence supports the jury's verdict in favor of Defendants Appelese. Over the course of the four-day trial, the District Court made several evidentiary rulings, only two of which are relevant to this appeal. First, the District Court excluded as hearsay a notation contained in Exhibit 38, which was not covered by any exception, including Rule 8034 as a statement made for purposes of diagnosis and treatment. Second, the Court excluded a deposition statement from an unavailable witness that was prejudicial to defendants, speculative, and cumulative.  And neither exclusion warrants a reversal of the jury's verdict in defendants' favor. To begin, the District Court acted within its discretion when it excluded a notation in Exhibit 38 as hearsay. The full version of Exhibit 38 is found on page A14 of the Appelese Appendix. The full statement was that the inmate discussed his frustration with what he perceives as the lack of attention to the grievance he filed when the COs kicked my ass. He stated that the warden in Springfield keeps sending him back. The statement about the correctional officers kicking my ass is hearsay. The statement itself was offered for truth as the matter asserted that an assault occurred when correctional officers beat the inmate. It was not offered to prove a symptom like frustration over the fight. It presumes that the beating indeed did happen. It does also not qualify under the hearsay exception in Rule 803.4 as a statement made for diagnosis and treatment because it is not reasonably pertinent to medical diagnosis or treatment. Whether something is reasonably pertinent to diagnosis and treatment is taken from the physician's viewpoint, and that's from this court's case in Cook v. Hoppen. The statement, the correctional officers kicked my ass, was not relevant to psychologist Dr. Botachek's treatment of Mr. Lovelace. As was explained on pages 5 and 6 of the transcript, she had stated that it was not related to his medical condition because he was, quote, not talking about any symptom of the mental health problems related to being assaulted. He's talking about his frustration with not having a response to his grievance about this situation and that he wasn't talking about any symptom that arose because of the situation. He sought treatment from Dr. Botachek because of frustration with the grievance process and bureaucratic red tape. He was not describing the subject matter of the grievance with his own symptoms or ailments stemming from the beating, and so it does not meet this exception. In addition, the district court did not abuse its discretion when it excluded additional speculative, prejudicial, and cumulative statements from Sullivan's deposition from being read in at trial. During his deposition, the attorneys asked Sullivan whether there was any reason he would not be able to tell the truth today. He responded, no, I just hope I don't get into trouble from IDOC, you know. This is my fifth time in IDOC. I've been here quite a bit since I was an adult, and I know they kind of like to cover things, stick together and cover things up, and I don't want, I'm supposed to get transferred back to Dixon, and I don't want it to affect me going back there. This material was properly excluded because it was speculative. It speculates about potential retaliatory action by the department, and it's baseless with absolutely no support in the record. It's also prejudicial because it could lead jurors to believe that because some other staff at some other point stuck together to cover something up in some other case, then these defendants here would have done the same thing. Instead of looking at what the defendants actually did in this trial, the jury would have been asked had this been kept in to evaluate the actions of others. In addition, it was cumulative on the point of whether Mr. Sullivan could testify to the truth. The statement, no, there was no reason that he wouldn't be able to testify truthfully today was read in at the deposition. In addition, jurors were told on pages 366 and 67 of the transcript that this witness was placed under oath to tell the truth before that deposition was read in at trial, and they were reminded during jury instructions that he was placed under oath to tell the truth, and that's at pages 542 and 43 of the transcript. Ultimately, because there was no abusive discretion, given that the statements in question were hearsay, cumulative, or speculative, and were prejudicial to defendants, defendants at police would request that this court affirm the district court's judgment in their favor. Thank you. Mm-hmm. Thank you, counsel. Anything further? Mr. Nelson? Briefly, Your Honors, the statement, again, was not hearsay because it was not offered to prove the truth of the matter asserted. It was offered in the context of showing that Mr. Lovelace was seeking medical treatment as a result of his frustration about the prison's handling of his beating. Again, at the lower level, the defendants, the court, and in Dr. Bohenik's deposition transcript all acknowledged that the statement was reasonably pertinent to Mr. Lovelace's medical treatment. It was written in Dr. Bohenik's notes for that purpose. In addition, defendants, again, draw this distinction between whether the frustration resulted from the grievance process or the beating itself, which, as we argue in our brief, is a distinction without a difference. What matters in terms of treating frustration is the cause. That's why the doctor wrote the specific cause down, because the treatment could differ depending on what the cause of the frustration is. On Mr. Sullivan's testimony, we've argued why the testimony is not cumulative. It's asked once in his deposition, and he responds once as to why there are reasons why he might have issues providing truthful testimony. The statement was not substantially prejudicial over its probative value, given the importance of Mr. Sullivan's credibility to Lovelace's case, and it was not speculative, because the statement was based on Mr. Sullivan's particular experiences within Dixon and addressed a concern that he had about his potential transfer back to the prison. So for these reasons, Plaintiff Appellee respectfully requests that this court reverse the district court and remand the matter for a new trial. Thank you. Thank you very much, counsel. We, Mr. Nelson, we appreciate your willingness to accept the appointment in this case and the assistance both you and your law firm have provided to your client and the court. Thank you very much. The case is taken under advisement.